REGAN, Judge.
The plaintiff, Albert Switzer & Associates, Inc., filed this suit against the defendant, Dixie Buick, Inc., endeavoring to recover the sum of $1,161.84 representing damages which it asserts it sustained as the result of purchasing a demonstrator automobile which was represented by the defendant to be a new car when the sale thereof occurred.
The defendant answered and conceded that the automobile had been driven by “an official of defendant”, but denied that the vehicle was a demonstrator; it then asserted that the use of the automobile by an official of the defendant was disclosed to the plaintiff.
After a trial on the merits, judgment was rendered in favor of the plaintiff in the amount of $1,161.84, and from that judgment defendant has prosecuted this appeal.
The record reveals that on June 14, 1968, the plaintiff, represented by R. H. Schneider, one of its officers purchased a 1968 Buick Riviera automobile from the defendant herein. The vehicle was purchased for the full sticker price of $6,692.79, and Schneider asserts that when the sale occurred the car was represented to him to be new. After driving the car approximately five miles, he stopped for gasoline and ascertained at that time that the mileage meter indicated a reading of 14 miles, of which he made a written notation. Therefore, it may reasonably be assumed that when he purchased the vehicle the odometer indicated a total distance trav-elled of about nine miles.
*314 Approximately two weeks later, Schneider was informed by a service attendant that the vehicle required an oil change, which seemed inconsistent to him with the number of miles he had driven up to that time. Moreover, an examination of the tires on the vehicle disclosed that there was tire wear inconsistent with mileage shown on the odometer. A check with the Buick Division of General Motors Corporation revealed that its records indicated the automobile purchased by the plaintiff as new had been officially placed into demonstration service by Colonial Buick, Inc., in October of 1967, which also does business in the New Orleans area.
Schneider made demand upon the defendant for a return of the purchase price, which the defendant, acting through Mel Jacobson, one of its principal officers, flatly refused. Instead Jacobson offered to retain the plaintiff’s money, take the automobile back, and deliver another automobile as soon as one could be manufactured by Buick at some undetermined date. Since the plaintiff needed a vehicle for travel between New Orleans and Baton Rouge in connection with its business it rejected Jacobson’s offer and proceeded to trade the vehicle on one almost identical to it with a Baton Rouge distributorship at a financial loss of $1,161.84.
The record is replete with testimony proving that the automobile which was sold by the defendant was in fact a demonstrator. For example, Jack Poelman, a former salesman employed by the defendant, testified that in October of 1967, while he was working as a salesman for Colonial Buick, Inc., he was assigned the 1968 Buick Riviera which was eventually sold to the plaintiff. He related that the automobile was in fact a demonstrator, and that when he left Colonial Buick to work at the defendant’s establishment on January 1, 1968, the car was purchased by Dixie Buick from Colonial Buick and he continued to use it at Dixie Buick as a demonstrator. He asserted that he and his wife both drove the automobile and that when he departed from the employ of the defendant in March or April of 1968, the reading on the odometer was 1,000 miles or more. In addition to the driving which was done with the vehicle by Poelman, he pointed out that the last time he saw the car he delivered it to a local attorney who at the time was the agent for service of process for the defendant corporation. Therefore, it is quite obvious that not only had the vehicle been driven in excess of 1,000 miles before it was sold to the plaintiff, but also that the odometer reading had been changed.
The defendant, through Mel Jacobson, testified that he had informed Schneider that he had driven the vehicle back and forth across the Mississippi River Bridge at New Orleans and showed him the dirt under the automobile while a trailer hitch was being attached to it. Jacobson insisted that the vehicle was new for the reason that it had never been sold to an individual but had constantly remained in the ownership of a Buick distributorship. However, when confronted with the warranty given by the Buick Division of the General Motors Corporation, he was compelled to admit that the warranty began to run from the date on which the vehicle was registered as a demonstrator by the dealer and not from the date upon which it was sold to an individual customer.
On appeal counsel for the defendant laboriously argues that the plaintiff’s action is one for redhibition or quanti minoris, and that the mere fact that the vehicle was a demonstrator is not sufficient to support a redhibitory action. However, a cursory reading of the pleadings and the record discloses that the action was one for damages as the result of a misstatement of a material fact sufficient to vitiate a contract of sale.
Article 1847 of the Louisiana Civil Code defines fraud as the cause of an error bearing on a material part of a contract with the design to obtain an unjust advantage to one party or a loss to the other. *315 The induced error must be related to a material part of the contract, that is such part thereof as may reasonably be presumed to have influenced the party in making it. This article also provides that a false assertion as to the value of the object of the contract will not invalidate the agreement provided the object thereof is of such a nature that the person defrauded might have detected the falsehood with ordinary care; however, a false statement with respect to the cost, value or quality of the object is sufficient to vitiate-the. qontract if the object thereof is one which requires a particular skill or any difficult or inconvenient procedure to discover the truth or falsity of the assertion.
The representation that a demonstrator automobile is a new vehicle obviously falls within the latter category, since the Legislature has seen fit to denounce this type of behavior as a misdemeanor in R.S. 32:1254, which prohibits representation and sale as a new and unused motor vehicle of any vehicle which has been used and operated for demonstration purposes.
The foregoing elucidation reveals that the only significant question posed for the trial court’s consideration was one of fact, and that is whether the defendant misrepresented the vehicle purchased by the plaintiff as a new automobile when in fact it had been used as a demonstrator for approximately eight months before the date of the sale to the plaintiff herein. The judge of the lower court obviously accepted the plaintiff’s version of the evidence and, therefore, concluded that the defendant was guilty of such fraud or misrepresentation so as to permit the plaintiff to recover damages therefor.
The principal question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence adduced herein so as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony or by endeavoring to reconcile the respective litigants’ version of the circumstances surrounding the sale of the questioned vehicle. The trial judge accepted the plaintiff’s version thereof and our analysis of the record convinces us that the evidence preponderates in its favor and that the trial court’s conclusion was correct.
In order to prove its damages the plaintiff established by means of documentary evidence the following figures:
1. Difference in the price of the used and new car $ 96.52
2. Extra cash for new car 1,014.35
3. Extra sales tax 40.47
4. Recordation and title expense _10.50
$ 1,161.84
The difference in the price of the automobiles resulted from the fact that the second vehicle purchased was not as completely equipped as the car purchased from Dixie Buick. While the defendant claims that the foregoing figures are based on speculation, our analysis of the record convinces us that they were proved quite amply by testimony and by the introduction of invoices relating to the purchase of both cars. These figures disclose exactly what additional expense the plaintiff was caused to incur in order to obtain a new automobile, which it had initially contracted to purchase.
Defendant argues that computation of damages in this manner places it at the plaintiff’s mercy, since the plaintiff could have traded the vehicle in for a much lower price and then sued for the difference. However, under the facts presented before us, the defendant has been caused no unjust inconvenience or damage by the procedure used by the plaintiff. At the outset, the plaintiff offered to return the car to the defendant for a new car or for return of the purchase price. Moreover, despite its obvious bad faith, defendant audacious *316 ly asks this court for a credit for depreciation for a period of approximately five weeks during which time the plaintiff used the vehicle. Defendant insists that the use of the vehicle for five weeks by the plaintiff entitles it to a credit of $300.00. Using the defendant’s own computation as to the loss of value caused by use, it is readily apparent that the sum of $1,014.35 paid by the plaintiff in addition to the trade of the used automobile is far below what, by defendant’s figures, the car would have depreciated by use over the eight month period during which it was in service as a demonstrator.
Our analysis of the record convinces us that the lower court committed no error in its computation of damages and therefore its judgment should be affirmed.
For the foregoing reasons, the judgment appealed from is affirmed. The defendant is to pay all costs incurred herein.
Affirmed.