331 So.2d 219 (1976)
Mrs. Joyce DEUTSCHMANN, wife of/and Frank Deutschmann
v.
STANDARD FUR COMPANY, INC.
No. 7374.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1976.
Rehearing Denied May 18, 1976.
Phelps, Dunbar, Marks, Claverie & Sims, Harry S. Redmon, Jr., John P. Manard, Jr., New Orleans, for plaintiffs-appellants.
George C. Stringer, Jr., New Orleans, for defendant-appellee.
Before GULOTTA, SCHOTT and ST. AMANT, JJ.
GULOTTA, Judge.
Plaintiffs appeal from a judgment dismissing their suit for return of a $400.00 deposit on a $2,000.00 mink coat ordered by Mrs. Joyce Deutschmann from defendant. We reverse.
In November, 1974, Mrs. Deutschmann placed an order with Elza Abel, president of Standard Fur Company, for a mink coat to be made by a New York furrier. Plaintiff-wife deposited with defendant the sum of $400.00 to be credited against the price of the coat. Mrs. Deutschmann specified that the coat was to be made with the furs running horizontally; that quality female continuous, not pieced together, furs be used; and, that the furs be of the same width as the furs selected by her from a model coat at Standard Fur.[1]
*220 Plaintiff testified that she refused to accept the coat for the reasons that 1) the skins of the coat were wider than the skins of the model coat at Standard Fur Company; 2) the horizontal skins were not continuous, but pieced together; and, 3) in "letting out the skins", the pelts had been sliced and sewn back together, rather than stretched.
The coat was returned by defendant to the New York furrier in an attempt to make alterations to satisfy plaintiff's complaints. After the coat had been returned from the furrier a second time, plaintiff rejected the coat and requested return of the deposit. Defendant refused and this suit followed.
This case is a classic example of a misunderstanding between two parties to a purported agreement resulting in lack of consent on the part of the purchaser. LSA.C.C. arts. 1797[2] and 1798.[3] Consent on the part of Mrs. Deutschmann was lacking (LSA-C.C. art. 1812)[4] because of error of fact on the part of the purchaser which was a principal cause for making the agreement. See LSA-C.C. arts. 1821,[5] 1823[6] and 1825.'[7]
Our jurisprudence is well settled that a contract may be invalidated for a unilateral error as to a fact which was the principal cause for making the contract, where the other party knew or should have known it was the principal cause. LSA-C.C. art. 1845; Savoie v. Bills, 317 So.2d 249 (La.App. 3d Cir. 1975); West Esplanade Shell Service, Inc. v. Breithoff, 293 So.2d 595 (La.App. 4th Cir. 1974). Error as to the nature or object of a contract may be with regard to either the substance or the object of the agreement, or substantial quality of the object, or some other quality of the object if such quality is the principal cause of making the contract. Jefferson Truck Equipment Co. v. Guarisco Motor Co., 250 So.2d 211 (La.App. 1st Cir. 1971).
Applying the above articles and jurisprudence to the instant case, we conclude *221 that consent was lacking and the purported agreement was vitiated because of error of fact which constituted a principal cause for making the agreement. Mrs. Deutschmann testified that she understood the coat would be made of continuous skins, i. e., horizontal pelts that were not "pieced together" and which were "let out" and would extend all around the coat. According to Mrs. Deutschmann, her definition of a continuous skin was, "I mean a long continuous skin, not several short ones pieced together." Her definition of a "fully let out" fur was as follows: "My understanding that they stretch the pelts instead of taking several small pieces and putting them together. If he could not have made it, I would have changed my plans." Mrs. Deutschmann further indicated that the furs used in the purchased coat were wider than the ones used in the model coat selected by her.
On the other hand, Abel's (a furrier with 40 years experience) understanding, according to trade usage, of the meaning of the terms "pieced together" and "let out", graphically illustrates the lack of understanding between the parties. Abel admitted that plaintiff wanted a coat with continuous horizontal furs and without seams. However, he differentiated between a fur "pieced together" with straight seams, which he defined as a pieced together coat, and furs pieced together with a "V-type seam", which he defined as "set up" and not "pieced together". According to Abel, use of a V-type seam is an acceptable method of joining skins, and, in trade jargon, is not considered piecing together. Significantly, Abel failed to communicate to plaintiff the trade usage difference between "pieced together" and "set up Vtype seams". Abel further testified that female skins are not long enough, i. e., 36 inches long, to be used continuously in a wrap-around horizontal fur coat, but must be pieced together.
Abel failed to communicate to plaintiff that the width of horizontal skins was different from the width of vertical skins. Significantly, although the model coat shown Mrs. Deutschmann was made of vertical skins, Abel did not communicate the difference in width to plaintiff.
Abel also stated that the term "let out" means that the fur is sliced and sewn back together. A let out skin, according to Abel, is one that has been cut and then let out.
Abel is the expert. He was aware that Standard Fur was unable to deliver to plaintiff that which she thought she had ordered. It was his responsibility to communicate to Mrs. Deutschmann information which, clearly, would have avoided the confusion. For reasons best known to himself, he failed to do so. Abel's lack of communication caused the misunderstanding on the part of Mrs. Deutschmann, resulting in the error of fact on the part of the purchaser which was a principal cause for making the agreement. See LSA-C.C. arts. 1812, 1821 and 1825. We find that consent was lacking in the instant case and that no agreement existed. The parties revert to the same position which they occupied prior to the purported formation of the agreement. Plaintiff is entitled to the return of her deposit.
Accordingly, the judgment of the trial court is reversed and set aside. Judgment is now rendered in favor of Mrs. Joyce Deutschmann and Frank Deutschmann, and against Standard Fur Company, Inc., in the sum of $400.00, together with legal interest thereon from date of judicial demand and for all costs.
REVERSED AND RENDERED.
NOTES
[1] Mrs. Deutschmann further specified that the coat be belted and have no buttons. The finished coat was made with four buttons and no belt, however, this problem was rectified to Mrs. Deutschmann's satisfaction by defendant and is not an issue in this case.
[2] "Art. 1797. Necessity for consent; proof.

"Art. 1797. When the parties have the legal capacity to form a contract, the next requisite to its validity is their consent. This being a mere operation of the mind, can have no effect, unless it be evinced in some manner that shall cause it to be understood by the other parties to the contract. To prevent error in this essential point, the law establishes, by certain rules adapted to the nature of the contract, what circumstances shall be evidence of such consent, and how those circumstances shall be proved; these come within the purview of the law of evidence."
[3] "Art. 1798. Offer and acceptance.

"Art. 1798. As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point."
[4] "Art. 1812. Unequivocal language for express acceptance.

"Art. 1812. Express consent must be given in a language understood by the party who accepts, and the words by which it is conveyed must be in themselves unequivocal; if they may mean different things, they give rise to error, which, as is hereinafter provided, destroys the effect of a contract."
[5] "Art. 1821. Error of fact.

"Art. 1821. That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none."
[6] "Art. 1823. Sufficiency of error to invalidate contract.

"Art. 1823. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself."
[7] "Art. 1825. Error as to motive.

"Art. 1825. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made."