480 So.2d 503 (1985)
Suzanne DANILSON
v.
CROWN BUICK, INC.
No. 85-CA-435.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1985.
Rehearing Denied January 17, 1986.
*504 George T. Mustakas, II, Metairie, for plaintiff-appellee.
A. Gerald Pelayo, New Orleans, for defendant-appellant.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
The plaintiff, Suzanne Danilson, filed this lawsuit to rescind the sale of a 1981 Buick Regal Limited for redhibitory defects. Named as defendants were the seller Crown Buick, Inc. and the manufacturer, General Motors Corporation. General Motors Corporation was dismissed on an exception of prescription and the district court granted judgment in favor of plaintiff and against Crown Buick, Inc., rescinding the sale, and requiring the return of the purchase price with legal interest, reasonable attorney's fees and all costs. Defendant, Crown Buick, Inc. has suspensively appealed and urges the following errors for our review:
1.) The judgment of the trial court was clearly and manifestly erroneous in finding that pursuant to Louisiana Civil Code Articles 1847 and 1848 that the plaintiff had proven by clear and convincing evidence that Crown Buick, Inc. had "intended" to defraud plaintiff when she purchased the 1981 Buick demonstrator.
2.) The judgment of the trial court was clearly and manifestly erroneous in finding that pursuant to Louisiana Civil Code Article 2529 that Crown Buick, Inc. had an obligation to tell Ms. Danilson as the purchaser of a demonstrator that the automobile purchased had been damaged and repaired before sale.
3.) In the alternative, the judgment of the trial court was clearly and manifestly erroneous in rescinding the sale of the 1981 Buick Regal Limited motor vehicle and returning the purchase price to Ms. Danilson.
4.) In the alternative, the judgment of the trial court was clearly and manifestly erroneous in awarding attorney's fees of Two Thousand Five Hundred and No/100 ($2,500.00) Dollars and assessing cost of these proceedings to the defendant.
The facts are that on October 20, 1981, Suzanne Danilson (plaintiff) purchased a 1981 Buick Regal Limited from Crown Buick, Inc. (defendant) for a sale price of $9,200.14 inclusive of sales tax, license and title cost. Plaintiff purchased a "demonstrator" which had approximately 3,900 miles on its odometer. This vehicle was presented and sold to the plaintiff as "just like new" and was accompanied with a manufacturer's new auto warranty. At all times during the sale discussion with defendant's salesperson, plaintiff expressed her desire and interest in a new vehicle.
Sometime shortly after the sale, in November or December of 1981, plaintiff detected a noise problem whenever she was on the highway. Plaintiff lived in Baton Rouge and frequently traveled on the highway. She believed and was informed that this noise presented no immediate mechanical impediment and could be repaired or adjusted whenever she was in the Metairie area.
In June, 1982, plaintiff went to Crown Buick to have this minor window adjustment performed on the car.
After bringing the vehicle to Crown Buick plaintiff was informed by the bodyshop manager that her car could not be adequately repaired because the vehicle she had purchased had been damaged in an accident and had not been properly repaired. Immediately the plaintiff informed the body shop manager that she had no knowledge of any wreck nor had she been involved in any accident. After learning of the previous wreck, the plaintiff demanded to speak with the manager and/or owner of the dealership and informed him that she *505 would not have purchased the 1981 Buick demonstrator had she known it had been wrecked. Despite plaintiff's repeated request that Crown Buick rescind the sale and return her purchase price, Crown Buick only offered to repair the car or to allow her to trade in the car on another vehicle.
The record reflects that at the time of trial the defendant's salesperson, Ms. Lisa Mayeaux, who sold plaintiff the automobile, testified that she remembered only shortly after the sale that the vehicle had been wrecked. Ms. Mayeaux had indicated that she knew that a 1981 demonstrator had been wrecked by one of Crown Buick's sales personnel, however was not aware that the automobile sold to the plaintiff was the actual wrecked vehicle. After discovery that this vehicle was the wrecked vehicle, she testified that she so informed Crown Buick's management. Management, according to Ms. Mayeaux's testimony chose not to inform the plaintiff that she had purchased a wrecked automobile.
The revelation of the "true" condition of the Buick demonstrator was due to an honest appraisal by the defendant's body shop manager. The plaintiff alleges that Ms. Lisa Mayeaux, the salesperson who sold her the 1981 Buick demonstrator, knew at the time of the sale that the automobile had been wrecked and repaired, however failed to disclose this fact. At all times during the sales negotiation, Ms. Mayeaux represented the demonstrator to plaintiff as being "like a new car". It is clear from the record that Crown Buick lured the plaintiff into a false preception that this 1981 Buick demonstrator was "like new". Although the demonstrator came with a full twelve-month 12,000 mile new car warranty from General Motors, defendant's representation to plaintiff was void of any indication that the demonstrator had been wrecked. Moreover, it is also crystal clear that had the plaintiff known of this unwanted condition, she would not have purchased the car.
We agree, as did the trial court, that Ms. Mayeaux did in fact have actual knowledge at the time of the sale to the plaintiff that her automobile had been wrecked and that Ms. Mayeaux failed to disclose this fact to plaintiff.
In this case, we are given the benefit of a well reasoned opinion of the trial judge contained in his written judgment. We find a well couched issue for our review, and concur that the critical issue to be resolved is ".... there is an obligation for a car dealership to tell a purchaser of a demonstrator that the automobile purchased had been damaged and repaired before sale." We find no error with the trial court's decision that our civilian law recognizes and dictates that an automobile dealership has the responsibility and obligation to inform a potential purchaser that the automobile purchased had been damaged and repaired before the sale. This responsibility exists both in law and fact in order to afford the consumer an opportunity to make an informed and intelligent purchasing decision. Our civilian law provides that "a declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principle motive for making the purchase," LSA-C.C. Art. 2529. Relative to this article, the Third Circuit in Reiner's v. Stran-Steel Corporation, et al, 317 So.2d 657 (La.App. 3rd Cir.1975), announced that an action in redhibition will be sustained "... even though such does not constitute a vise or defect."
We find from the review of the record that through its sales person, Crown Buick, represented to plaintiff that the 1981 demonstrator was "like a new car" when in fact it was not "like a new car" and had been wrecked. In this respect, we are convinced that the principal motive and quality in plaintiff's purchasing decision was that she wanted to buy a new 1981 vehicle or a "like new" demonstrator. However, in order to conform to her financial parameters, she would accept some low mileage if accompanied with a new car warranty. Crown Buick's conscious decision not to declare certain vices in the demonstrator obviated the plaintiff's "principal motive in *506 making her purchase", LSA C.C. Art. 2529 and Reiners v. Stran-Steel Corporation, et al, supra.
We agree with the trial court that the misleading representations regarding value and/or quality were sufficient to vitiate the purchase contract, LSA C.C. art. 1847. The trial court in its written reasons for judgment indicated that: "the representation that the car [a 1981 demonstrator] was like a new car is deliberately misleading. Thus, in this instance, the defendant had an obligation to tell Ms. Danilson that the car had been damaged before the sale since a failure to disclose this fact coupled with the representation that the car was `like a new car' was misleading. No reasonable person would have purchased a car which he was told was `like a new car' had he known it was involved in a major accident."
Throughout the United States and without doubt in this State, safeguarding the economic rights and prerogatives of our consumers has become paramount and worthy of our notice. No longer will we tolerate the economic disparity in bargaining positions between an innocent consumer and a seller who knows of defects in its product. In this regard, certainly "caveat vendor" should replace "caveat emptor".
Part of the applicable law distinctly set forth in Albert Switzer & Associates, Inc. v. Dixie Buick, Inc., 265 So.2d 313 (La. App. 4th Cir.1972) and LSA C.C. art. 1847 indicates that the selling of a "used" product and representing that it is "newer" than it in fact is constitutes fraud. In this case, Crown Buick was aware that the demonstrator had been involved in an accident and was repaired before its sale. In such an instance, the law in Louisiana has clearly and consistently held that it is misleading to represent that a vehicle has not been wrecked when, in fact, it has. There is no doubt that there is an obligation and responsibility to communicate to all innocent consumers in an unambiguous manner so that reasonable minds could not differ that what the consumer was buying was the item he intended to purchase, Deutschmann v. Standard Fur Company, 331 So.2d 219 (La.App. 4th Cir.1976).
We are convinced that a seller who may occupy the more informed position relative to the inherent vices of a thing to be purchased has the legal duty to advise the uninformed consumer of these defects, LSA-C.C. art. 2474. Furthermore, as in this case, the plaintiff should not be placed in a position of economic disadvantage, whereby the seller attempts to shelter and hide behind so-called customs and usages of its trade.
There is no doubt that Crown Buick had prior knowledge of the damaged demonstrator, upon which extensive repairs had been made. They consciously and knowingly thought to gain an unfair economic advantage through and in representing that the demonstrator was "like a new car". The plaintiff never wanted to own a car that was involved in an accident, accordingly, a reduction in the purchase price of the demonstrator would not be adequate compensation. If we should order that the plaintiff take a reduction in the purchase price, because she had the use of the vehicle, this would in effect force her to accept an automobile which she clearly would never have bought.
At trial, testimony was offered and accepted by the court as expert in mechanical repairs that the 1981 Buick demonstrator could never, considering its wrecked and repaired history, be converted to a new or "like new" vehicle. The crucial issue which is presented on appeal is whether there existed misrepresentation as to the inherent quality and characteristics of this demonstrator. The record convinces us that the evidence preponderates in plaintiff's favor and that the trial court's conclusion was correct.
With appreciation of the surrounding facts, the applicable law is set forth in LSA C.C. art. 2545 which provides for damages as follows:
"The seller, who knows that vice of the thing he sells and omits to declare it, besides the restitution of price and repayment *507 of expenses, including reasonable attorney's fees is answerable to the buyer in damages."
As to attorney's fees, the civil code makes a basic distinction between sellers with and sellers without knowledge of the defects at the time of the sale. Civil Code Article 2531 provides that the seller without knowledge is bound only to restore the price (or pay the reduction in value). Civil Code Article 2545 provides that the seller with knowledge of the defects at the time of the sale must pay damages and a reasonable attorney's fee.
In applying these rules to the present case, we take particular note of the rule of appellate review that the findings of fact by the trial judge should be sustained where there is a reasonable evidentiary basis to support those findings. As to the threshhold issue of whether the defect complained of was so inconvenient and imperfect, that it must be supposed that the plaintiff would not purchase it, had she known of the vice, the trial judge held that the quality of the automobile warranted rescission of the sale. There is reasonable evidentiary basis to support this finding of fact. Accordingly, we find that the plaintiff is entitled to rescission of the sale and return of the purchase price, as well as the reasonable attorney's fees fixed by the trial court. Moreover, we concur with the trial court that the record is void of sufficient evidence to substantiate that the plaintiff met her burden in proving any other damages.
Although the courts of this State may allow a vendor credit for the use of a product by a purchaser even when the seller is in bad faith, this economic benefit for use is not automatically granted by the courts, Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978). Relative to this credit, the record is unfortunately void of any evidence as to the value for the use of the 1981 Buick demonstrator by plaintiff. Accordingly, we affirm the trial court's denial of any credit for plaintiff's use.
For the forementioned reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.