**Gretchen E. Kurzweg MARPLE, Plaintiff–Appellant,**

v.

**Frank T. KURZWEG and Frank Turner Kurzweg, Jr., Defendants–Appellees.**

No. 89–3388.

United States Court of Appeals, Fifth Circuit.

June 5, 1990.

Clyde P. Martin, Jr., Thomas M. Gereighty, New Orleans, La., for plaintiff-appellant.

Jerry C. Paradis, Metairie, La., for defendants-appellees.

Before GEE, GARZA and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Gretchen Kurzweg Marple appeals the summary judgment dismissal of her action. We affirm.

## I. FACTS

This case is the continuation of a series of court battles between members of the Kurzweg family.[1] In this, the latest round, Marple seeks redress for wrongs that allegedly occurred during the settlement negotiations of an earlier lawsuit.

Gretchen Kurzweg Marple received a number of shares of stock in Consolidated Companies (Conco) through various donations from her family. In 1982, apparently for personal reasons, Marple executed a document purporting to donate all assets she had received from her family to her father, Dr. Frank T. Kurzweg. Relying on this act of donation and on an earlier granted power of attorney, Dr. Kurzweg placed these assets in a trust, naming himself trustee and Gretchen the sole beneficiary.

In 1983, Marple sued to annul the transfer of assets and the trust. That suit ended in a 1984 consent judgment, which declared null the donation, the power of attorney and the trust. As part of the settlement, Marple transferred the Conco stock to her brother, F. Turner Kurzweg, Jr. The settlement agreement did not assign any particular value to the stock.

Marple brought the present suit in 1987 seeking relief of fiduciary duty, fraud, error, and unjust enrichment. The trial judge granted summary judgment for the defendants and this appeal followed.

## II. DISCUSSION

Marple seeks relief under the theories of breach of fiduciary duty, fraud, error, and unjust enrichment. Louisiana law governs this diversity case.

### A. Breach of Fiduciary Duty

Marple asserts that Dr. Kurzweg owed her a fiduciary duty as trustee of the

---

1. This is our second occasion to address the disputes between these parties over more or less the same subject matter. *See Kurzweg v. Marple,* 841 F.2d 635 (5th Cir.1988).

trust he purported to create, and that he breached that duty during the settlement of her earlier lawsuit. The district court concluded that the trust, which had been declared null in the first lawsuit, could not have created any fiduciary duties.[2]

We agree with the district court that Dr. Kurzweg owed no fiduciary duty to Marple as trustee of a trust that was declared a nullity. The judgment in the first lawsuit declared the trust, along with the underlying donation and power of attorney, null. Marple cites no Louisiana statute or case that creates or recognizes fiduciary duties flowing from a trust that never existed.

■ Marple asks us to recognize a fiduciary-type duty based on the doctrines of "constructive trust" or "resulting trust." Marple does not cite any Louisiana authority to support her application of these doctrines, and we have not located any that does. Indeed, the "constructive trust" is not recognized in Louisiana. *See Mansfield Hardwood Company v. Johnson*, 268 F.2d 317 (5th Cir.1959); *Schwegmann v. Schwegmann*, 441 So.2d 316, 322–23 (La. App.1983). Hence, we decline to recognize a fiduciary duty based on these doctrines.

■ Marple also asks us to recognize a fiduciary duty stemming from the null trust on the ground that if we do not, trustees will be allowed to abuse trust beneficiaries and then rely on the technical invalidity of the trust to escape liability. Whatever the merit of a fiduciary duty-based claim in such a situation, that is simply not the case here. It was Marple, not Dr. Kurzweg, who pressed the invalidity of the trust, and it was Marple who was ultimately successful in having its invalidity judicially declared. Marple now seeks to revive the trust, which she had annulled, for purposes of imposing duties on Dr. Kurzweg during the time she was seeking to have the effects of the trust erased. We agree with the district court that Louisiana

would not allow the beneficiary of a null trust to have a trust annulled and then claim the benefit of fiduciary duties during the time the beneficiary was actively seeking to have the trust declared invalid.

### B. Fraud

■ Marple argues next that fraud tainted her consent to the settlement agreement. Under Louisiana law, fraud is defined as "error bearing upon a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause loss or inconvenience to the other." *Hall v. Arkansas–Louisiana Gas Co.*, 368 So.2d 984, 993 (La.1979).[3]

The "artifice" identified by Marple consists of representations allegedly made during the settlement negotiations of the earlier lawsuit. Marple asserts that Dr. Kurzweg and James Holmes, attorney for Dr. Kurzweg, declared the Conco stock to be worth the value shown on certain accounting reports. One accounting report gave a $73,310.88 value for the holding, or $4.40 per share; the other showed the amount as $94,222.00, or $5.35 per share. These assertions, Marple contends, misled her concerning the value of the stock.

The summary judgment evidence that Dr. Kurzweg and his attorney made these representations is very weak; however, it is sufficient to raise a genuine issue of fact, and therefore we must assume for purposes of this appeal that the representations were made. Marple's fraud claim fails nonetheless.

Generally, a party must use "ordinary attention" to determine the truth or falsity of "an assertion as to the value of ... the object of the contract." La.Civ.Code art. 1847(3) (1870). *See Marsh Investment Corp. v. Langford*, 784 F.2d 184, 185 (5th Cir.1986). The summary judgment record

---

**2.** In the district court, Marple also based her fiduciary duty claim on Dr. Kurzweg's status as director of a corporation in which she held stock. *See* La.Rev.Stat.Ann. § 12:91. Marple has neither briefed nor argued that point on appeal and therefore we consider that claim abandoned. *See Atwood v. Union Carbide*

*Corp.*, 847 F.2d 278, 279–80 (5th Cir.1988); *Price v. Digital Equipment Corp.*, 846 F.2d 1026 (5th Cir.1988).

**3.** The parties implicitly agree that the Louisiana obligations law in effect before the 1984 revision applies to this case.

demonstrates that Marple could have discovered the truth had she exercised "ordinary attention." Both Marple and her attorney were educated and sophisticated in business matters, and she had hired an accountant to assist her. She, her attorney, and her accountant had complete access to all books, records and accounting information concerning the stock. Had they made the slightest inquiry, they would have learned that the book value of the stock was over $62 per share. They also would have learned that a formula had been developed by the company to valuate the stock for purposes of the tender offers, and that applying this formula at the time of the settlement would have yielded a stock value of $22 per share. Based on this, we conclude that the summary judgment record establishes that "ordinary attention" would have avoided any deception that occurred.

The "ordinary attention" requirement, however, is suspended when "the object [is] one that requires particular skill or habit, or any difficult or inconvenient operation to discover the truth or falsity of the assertion." La.Civ.Code art. 1847(4) (1870). While accurate valuation of this minority stock interest may have required special skill and effort, it took no special skill or effort for Marple, her attorney and her accountant to determine that the stock was likely worth much more than the value represented. Through a deposition of Conco's president, Marple's attorney learned that two tender offers, one for $23 per share and one for $29 per share, had been made in the three years before the settlement. Comparing the relatively low price allegedly represented to them with the much higher tender offer prices, which Marple contends was closer to the true stock value, was a simple exercise. Because the "truth or falsity of the assertion" was not difficult to determine, Marple cannot claim that she was exonerated of her burden to use ordinary attention in determining the accuracy of the representations.

Because Marple was required to exercise "ordinary attention" in determining the accuracy of the representations made to her and the summary judgment record demonstrates that Marple did not do so, her fraud claim must fail.

### C. Error

■ Marple also wants the settlement set aside because she had an erroneous understanding of the value of the stock. Unilateral error annuls a contract only when the error touches upon the "principal cause" for making the contract; error regarding a "subsidiary motive" will not impair consent. La.Civ.Code art. 1825 (1870); *Hall v. Arkansas–Louisiana Gas Co.,* 368 So.2d at 992. Also, the party claiming error must establish that the other party to the contract knew or should have known that the fact the other party was in error about was the principal cause for making the agreement. La.Civ.Code art. 1826 (1870); *Deutschmann v. Standard Co.,* 331 So.2d 219 (La.App.1976). Marple fails at each step.

Marple does not identify the "principal cause" of the settlement agreement. She does indicate in her affidavit that she had instructed her attorney to settle only if she was to receive eighty percent of her assets. Marple at no time claims that she did not get eighty percent of the value of her assets in the aggregate. Presumably, therefore, she is asking this court to infer that her principal cause was receiving eighty percent of the value of a particular asset, the Conco stock.

There is, however, no evidence that Marple assigned particular importance to the amount received in exchange for the Conco stock. As the defendants point out, this was a complicated settlement involving quite a number of assets. As inducement for the settlement, Marple received control over her assets (which was disputed before the settlement), over $800,000 in cash, an interest in a spendthrift trust containing at least $500,000, and an end to the litigation. Nothing in the settlement documents assigns a value to the stock or in any way suggests that Marple wished to receive a particular value for the stock; in fact, Marple admits that her own accountant informed her it would be prohibitively expensive to calculate the value of the stock accurately. This summary judgment evi-

dence does not create a genuine issue that Marple's principal motive for this settlement was receiving a particular value for the Conco stock.

Even if we accept that Marple's principal motive was to receive a particular value for the Conco stock, there is no evidence that the defendants knew or should have known of her motive. As we have already noted, the settlement agreement did not assign any particular importance to the Conco stock. Marple points to nothing that should have indicated to the defendants her desire to receive a particular value for the Conco stock. We agree with the district court that any error the plaintiff may have labored under was not sufficient to vitiate her consent to the settlement.

### D. Unjust Enrichment

The plaintiff also argues that the defendants were unjustly enriched at her expense. Quasi-contractual remedies such as unjust enrichment may not supplant a contract between the parties. *Miller v. Housing Authority of New Orleans,* 190 So.2d 75, 81 (La.1966); *Union Texas Petroleum Corp. v. Mid Louisiana Gas Co.,* 503 So.2d 159, 165 (La.App.1987). The consent judgment, a form of contract, expressly covered the stock transfer. Hence, quasi-contractual relief is not available.

AFFIRMED.