Lillie D. BROWN and Lois N. Gomes, et al.

v.

COLEMAN INVESTMENTS, INC., et al.

No. Civ.A. 96–3297–B–M2.

United States District Court, M.D. Louisiana.

Jan. 23, 1998.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Edelman & Combs, Chicago, IL, Garth Jonathan Ridge, Baton Rouge, LA, for plaintiff Lillie D. Brown.

Garth Jonathan Ridge, Baton Rouge for plaintiffs Lois N. Gomes, Marilyn Greene, Stephanie Greene, Willie Greene.

Allen J. Myles, Plaquemine, LA, Garth Jonathan Ridge, Baton Rouge, LA, for plaintiff Barbie Darnell Harris.

Allen J. Myles, Plaquemine, LA, for plaintiffs Marilyn Greene, Stephanie Greene, Willie Greene.

Kirk A. Patrick, III, McGlinchey Stafford Lang, Baton Rouge, LA, John Joseph Price, John O. Shirley & Associates, Baton Rouge, LA, for defendant Coleman Investments, Inc., Robert Coleman.

Paul S. West, McGlinchey Stafford Lang, Baton Rouge, LA, Anthony Joseph Rollo, Jr., Michael H. Rubin, Lauren L. Zimmermann, McGlinchey Stafford Lang, New Orleans, LA, David S. Willenzik, McGlinchey Stafford Lang, New Orleans, LA, for defendant Toyota motor Credit Corporation.

Lloyd Eades Hogue, David Felicien Waguespack, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, LA, Patrick Johnson, Jr., Lemle & Kelleher, New Orleans, LA, for defendant Hibernia National Bank.

## RULING ON HIBERNIA NATIONAL BANKS MOTION FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS

POLOZOLA, District Judge.

This matter is before the Court on a motion for summary judgment and for judgment on the pleadings filed by Hibernia National Bank ("Hibernia"). Because the Court has considered and relied on evidence submitted outside of the pleadings in deciding this motion, the Court will treat this motion as a motion for summary judgment.[1] For

1. Fed.R.Civ.P. 12(b)

reasons which follow, Hibernia's motion for summary judgment is GRANTED.

## FACTS & PROCEDURAL HISTORY

Lillie D. Brown ("Brown") and Lois N. Gomes ("Gomes") filed this suit asserting separate claims against the various defendants[2] under the Truth in Lending Act[3] ("TILA"), the Racketeer Influenced and Corrupt Organizations Act[4] ("RICO") and a state law claim for "equitable restitution."[5] Brown has filed suit against TMCC, Coleman Toyota, Robert Coleman and Robert Coleman, Jr. Brown has filed no claims against Hibernia. Gomes has filed claims against Hibernia, Coleman Toyota, Robert Coleman and Robert Coleman, Jr. Gomes has filed no claims against TMCC. Since Brown has not filed a claim against Hibernia, this ruling will address only the claims Gomes has asserted against Hibernia. The Court now turns to a brief discussion of the facts of this case.

On or about September 20, 1995, Gomes executed a retail installment contract with Coleman Toyota for the purchase of a 1995 Toyota Tercel. The Truth in Lending Disclosure statement prepared by Coleman Toyota disclosed an "amount financed"[6] of $12,212.42, a "finance charge"[7] of $4,357.18 and an "annual percentage rate"[8] of 12.50%. Included in the $12,212.42 "amount financed" was a $97 charge for a "license fee." The actual amount of the "license fee" charged by the State of Louisiana was $25. In addition, Coleman Toyota assessed Gomes $21 for the cost of ad valorem taxes owed by Coleman Toyota as a result of the sale. Gomes's retail installment contract was assigned to Hibernia which provided the financing for the vehicle.

Based upon the above facts, Gomes has asserted the various claims set forth above against Hibernia. The Court now turns to a discussion of the legal principles the Court must follow in ruling on this motion for summary judgment and a discussion of the merits of the claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[9] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that partys' case, and on which that party will bear the burden of proof at trial."[10] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[11] "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's re-

---

**2.** The defendants in this action are Coleman Investments, Inc., d/b/a Coleman Toyota ("Coleman Toyota"), Toyota Motor Credit Corporation ("TMCC"), Hibernia, Robert Coleman and Robert Coleman, Jr. The fictitious defendants named by the plaintiffs will be ignored by the Court in accordance with the Federal Rules of Civil Procedure.

**3.** 15 U.S.C. § 1601, et seq.

**4.** 18 U.S.C. § 1961, et seq.

**5.** The plaintiffs filed a motion to certify this suit a class action lawsuit, but as of the date of this ruling, the Court has not ruled on that motion.

**6.** *See* 15 U.S.C. § 1638(a)(2) for definition of "amount financed."

**7.** *See* 15 U.S.C. § 1605(a) and 12 C.F.R. § 226.4(a) for definition of "finance charge."

**8.** *See* 15 U.S.C. § 1638(a)(4), 12 C.F.R. § 226.18(e) and 12 C.F.R. § 226.22 for discussion of the "annual percentage rate."

**9.** Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

**10.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

**11.** *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553).

sponse." [12]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[13] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[14] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." [15] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." [16] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[17]

When affidavits are used to support or oppose a motion for summary judgment, the affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." [18] Affidavits that are not based on personal knowledge or that are based merely on information and belief do not satisfy the requirements of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment.[19] Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact.[20]

## ANALYSIS

As listed above, Gomes has filed against Hibernia various TILA claims, a RICO claim under 18 U.S.C. § 1962(c), and a claim for "equitable restitution." The Court will first address the various TILA claims.

### I. *TILA Claims*

Gomes has alleged several violations of TILA in her complaint. Coleman Toyota is primarily liable for any TILA violations, while Hibernia is only secondarily liable. Therefore, the Court will first analyze the merits of the alleged TILA violations. If the Court finds there was no TILA violations, Coleman Toyota cannot be primarily liable, and Hibernia, being only secondarily liable, would be "off the hook as well." [21]

#### (I)(A) *Substantive TILA Violations*

Gomes has alleged the following violations of TILA: (1) by charging $97 for a "license fee" that actually cost $25, Coleman Toyota understated the "finance charge" by $72, overstated the "amount financed" by $72 and understated the "annual percentage rate;" (2) Coleman Toyota failed to disclose the fact of or amount of the $72 upcharge; and (3) Coleman Toyota assessed Gomes $21 for ad valorem taxes which were legally owed by Coleman Toyota thereby understating the "finance charge." The following is an analysis of these claims.

---

12. *Little*, 37 F.3d at 1075.

13. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

14. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

15. *Id. Accord, S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

16. *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.) (citing *Little*, 37 F.3d at 1075, *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).)

17. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

18. Fed.R.Civ.P. 56(e); *Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.*, 993 F.2d 1178, 1182 (5th Cir.1993).

19. *Richardson v. Oldham*, 12 F.3d 1373, 1378–79 (5th Cir.1994).

20. *McCallum Highlands*, 66 F.3d at 92; *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1207 (5th Cir.1993); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992) (citations omitted).

21. *McGee v. Kerr–Hickman Chrysler Plymouth*, 93 F.3d 380, 385 n. 9 (7th Cir.1996).

**(I)(A)(1)** *Effects of the Alleged $72 Understatement of the "Finance Charge"*

■ This claim centers around the characterization of a $97 "license fee" charged by Coleman Toyota. Since the "license fee" was only $25, Gomes argues that Coleman Toyota violated TILA by including the $72 upcharge in the "amount financed," instead of the "finance charge." The following is a summary of the violations of TILA resulting from the alleged misclassification of the upcharge:

a. Coleman Toyota understated the "finance charge" disclosed to Gomes by $72 in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d).

b. By understating the "finance charge," Coleman Toyota necessarily overstated the "amount financed" disclosed to Gomes by $72 in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b).

c. Because the "finance charge" and the "amount financed" were understated and overstated, respectively, Coleman Toyota necessarily understated the "annual percentage rate" disclosed to Gomes in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).

Hibernia contends the $72 upcharge is not a "finance charge" because the entire $97 charged for the "license fee" meets the comparable cash transaction exception to the definition of "finance charge." [22] The Court finds there are genuine issues of material fact in dispute which preclude summary judgment on the issue of whether the $72 "license fee" meets the comparable cash transaction exception to the definition of "finance charge." [23]

**(I)(A)(2)** *Inaccurate Disclosure of a "License Fee"*

Gomes also contends that the $97 "license fee" is an inaccurate disclosure, in violation of 15 U.S.C. § 1638(a)(2)(B)(iii),[24] 12 C.F.R. § 226.18(c)(1)(iii),[25] and 12 C.F.R. § 226.18(c)(2),[26] because Coleman Toyota failed to disclose the fact of or the amount of the $72 upcharge retained by Coleman Toyota. The issues before the Court on this claim are whether, under the above cited statute and regulations, Coleman Toyota must dis-

22. "Finance charge" is defined by 15 U.S.C. § 1605(a) of TILA as follows:

Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. *The finance charge does not include charges of a type payable in a comparable cash transaction . . .* (emphasis added).

"Finance charge" is also defined by 12 C.F.R. § 226.4(a) of Regulation Z as follows:

The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. *It does not include any charge of a type payable in a comparable cash transaction* (emphasis added).

23. Although the issue of fact precludes the Court from determining whether there was a TILA violation, the Court does find that there can be no liability imposed on Hibernia on this issue for reasons set forth in Part (1)(B) of this opinion.

24. 15 U.S.C. § 1638(a)(2)(B)(iii) provides as follows:

In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumers' right to obtain, *upon a written request,* a written itemization of the amount financed . . . . Upon receiving an affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For the purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable: . . . (iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person . . . (emphasis added).

25. 12 C.F.R. § 226.18(c)(1)(iii) states that for each transaction, the creditor shall disclose a "separate written itemization of the amount financed, including . . . (iii) [a]ny amounts paid to other persons by the creditor on the consumer's behalf[, and] [t]he creditor shall identify those persons."

26. Similar to 15 U.S.C. § 1638(a)(2)(B), 12 C.F.R. § 226.18(c)(2) provides that the creditor need not disclose a separate written itemization of the amount financed if the creditor discloses to the consumer that the consumer has the right to obtain this separate written itemization, and the consumer declines to exercise this right.

close that: (1) an upcharge is included in the "license fee;" (2) the specific amount of the upcharge of $72; or (3) whether Coleman Toyota is required to disclose neither the fact of or amount of the upcharge. It is clear under the facts of this case that Coleman Toyota has neither disclosed the fact of or amount of the upcharge.

For the reasons set forth in the Court's "Ruling on Coleman Investment, Inc.'s and Robert Coleman's Motion for Summary Judgment and Judgment on the Pleadings," the Court grants Hibernia's motion for summary judgment on this issue. Since the Court has found in the aforementioned ruling that Coleman Toyota is not primarily liable for this TILA violation, Hibernia is not secondarily liable for this alleged TILA violation.

### (I)(A)(3) *Disclosure of Ad Valorem Tax*

■ As noted above, Hibernia assessed Gomes $21 for the cost of the ad valorem taxes owed by Coleman Toyota as a result of the sale. Coleman Toyota has a policy and practice of passing on the amount of the ad valorem taxes Coleman has to pay to both cash and credit customers.[27] Gomes contends that Coleman Toyota's failure to disclose the $21 ad valorem tax as a "finance charge" violates 15 U.S.C. § 1638 of TILA and 12 C.F.R. § 226.18 of Regulation Z.

Hibernia argues the $21 ad valorem tax is not a "finance charge" because it meets the comparable cash transaction exception set forth in 15 U.S.C. § 1605(a) of TILA and 12 C.F.R. § 226.4(a) of Regulation Z. Hibernia contends it is Coleman Toyota's policy to pass through the cost of ad valorem taxes to both cash and credit customers.[28] Gomes has produced no evidence that cash customers are treated differently from credit customers in this regard. Therefore, the Court finds the $21 ad valorem tax passed through to Gomes meets the comparable cash trans-

action exception to the definition of "finance charge." As such, the $21 ad valorem tax was properly excluded from the "finance charge" by Coleman Toyota. Since Coleman Toyota is not primarily liable for this alleged violation of TILA, Hibernia cannot be secondarily liable as an assignee. Thus, the Court grants Hibernia's motion for summary judgment on this issue.

### (I)(A)(4) *Conclusion Substantive TILA Violations*

In summary, because there are genuine issues of material fact in dispute, the Court denies Hibernia's motion for summary judgment on the issue of whether the "amount financed," "finance charge," and "annual percentage rate" disclosed to Gomes were misstated due to the inclusion in the "amount financed" of the $72 upcharge in the $97 "license fee." However, the Court grants Hibernia's motion for summary judgment on the issue of whether the fact of or the amount of the $72 upcharge must be disclosed to Gomes. Finally, the Court grants Hibernia's motion for summary judgment on the issue of whether Coleman Toyota's practice of passing through the cost of ad valorem taxes to its customers is a violation of TILA.

### (I)(B) *Discussion of Hibernia's Liability as an Assignee*

Gomes contends Coleman Toyota is liable under TILA for the failure to classify $72 of the $97 "license fee" charged to Gomes as a "finance charge,"[29] for failing to disclose the fact of or the amount of the $72 upcharge in the $97 "license fee," and for failing to include the $21 ad valorem tax charged to Gomes in the "finance charge." The Court previously dismissed the claims concerning the failure to disclose the fact of or the amount of the upcharge in the "license fee" and the claim concerning the classification of the $21 ad valorem tax. Therefore, the

---

27. TMCC's Memorandum in Support of Motion for Summary Judgment ("TMCC's Memo"), Exhibit 4 (Affidavit of Julie Fields).

28. TMCC's Memo, Exhibit 4 (Affidavit of Julie Fields).

29. In the interest of brevity, when the Court refers to the alleged understatement of the "finance charge" by $72, the Court is also necessarily referring to the additional alleged TILA violations of the alleged overstatement of the "amount financed" by $72 and the alleged understatement of the "annual percentage rate."

Court will consider Hibernia's secondary liability only on the claim involving the failure to classify the $72 upcharge in the "license fee" as a "finance charge."

Gomes contends Hibernia is liable for this violation of TILA by Coleman Toyota based on two theories. First, Gomes claims Hibernia is liable under 15 U.S.C. § 1641(a) as an assignee of the retail installment contract. Second, Gomes asserts the language in the retail installment contract assigned to Hibernia subjects Hibernia to TILA liability.

For the reasons set forth in the Court's "Ruling on Toyota Motor Credit Corporation's Motion for Summary Judgment and Judgment on the Pleadings," the Court grants Hibernia's motion for summary judgment on the remaining TILA claim. Specifically, the Court finds that Hibernia is neither liable as an assignee for this TILA violation pursuant to 15 U.S.C. § 1641(a) nor is Hibernia liable for this alleged TILA violation based on the FTC Holder Notice included in the retail installment contract between Gomes and Coleman Toyota.

## II. *RICO Claim*

Gomes has filed a RICO claim premised on 18 U.S.C. § 1962(c) [30] against Hibernia. For the reasons given in the Courts's "Ruling on Toyota Motor Credit Corporation's Motion for Summary Judgment and Judgment on the Pleadings," Hibernia's motion for summary judgment on Gomes's RICO claim is granted.

## III. *"Equitable Restitution"*

■ In her complaint, Gomes asserts a claim for "equitable restitution" seeking to collect the $72 upcharge included in the $97 "license fee" and the $25 in ad valorem taxes charged to Gomes by Coleman Toyota.

Since there is no cause of action under Louisiana law for "equitable restitution," the Court must assume that Gomes is attempting to state a claim for "unjust enrichment." In order to establish a claim for unjust enrichment, Gomes must prove (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law.[31] Courts may, however, "resort to equity only in cases of unjust enrichment for which there is no justification in law or contract."[32] In other words, "[q]uasi-contractual remedies may not supplant a contract between the parties."[33] In addition, "[a] plaintiff can recover in unjust enrichment only if there is no other practical remedy available by which the impoverishment might be or might reasonably have been avoided."[34]

■ The Court finds Gomes may not recover against Hibernia for unjust enrichment because there is a contract between the parties. Furthermore, Gomes has another remedy at law under the Louisiana Motor Vehicle Sales Finance Act ("LASFA").[35] Gomes attempted to assert a claim under the LASFA in Gomes's second amended complaint which was previously denied by the Court. Thus, based on the foregoing, the Court grants Hibernia's motion for summary judgment on Gomes's claim for unjust enrichment.

## IV. *Conclusion*

Insofar as Coleman Toyota's primary liability on the TILA on the TILA claims, the Court finds there are genuine issues of material fact which preclude summary judgment

---

**30.** § 1962(c) provides the following:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**31.** *Baker v. Maclay Properties Co.*, 648 So.2d 888, 897 (La.1995) (citations omitted).

**32.** *SMP Sales Mgt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir.1992) (citations omitted).

**33.** *Marple v. Kurzweg*, 902 F.2d 397, 401 (5th Cir.1990) (citations omitted).

**34.** *Carter v. Flanagan*, 455 So.2d 689, 692 (La. App. 2d Cir.1984).

**35.** La.R.S. 6:951, et seq.

on the issue of whether the "finance charge" disclosed by Coleman Toyota was understated by the amount of the $72 upcharge in the "license fee." Based on the applicability of the "good faith conformity" defense set forth in 15 U.S.C. § 1640(f), the Court grants summary judgment on the issue of whether Coleman Toyota is required to disclose the fact of or the amount of the upcharge in "license fee" charged to Gomes. The Court also grants Hibernia's motion for summary judgment, on the issue of whether the amount of the ad valorem tax, owed by Coleman Toyota, and passed through to Gomes, should have been included in the "finance charge."

Hibernia can only be held secondarily liable for the remaining alleged TILA violation. Therefore, even though the Court denied Hibernia's motion for summary judgment on the issue of whether Coleman Toyota was primarily liable for the first TILA claim set forth above, the Court finds Hibernia is not secondarily liable for this alleged TILA violation. Specifically, the Court finds Hibernia is neither liable as an assignee for this TILA violation pursuant to 15 U.S.C. § 1641(a) nor is Hibernia liable for this alleged TILA violation based on the FTC Holder Notice included in the retail installment contract between Gomes and Coleman Toyota.

With regard to the RICO claim under § 1962(c), for the reasons given in Court's "Ruling on Toyota Motor Credit Corporation's Motion for Summary Judgment and Judgment on the Pleadings," Hibernia's motion for summary judgment on Gomes's RICO claim is granted.

The Court also grants Hibernia's motion for summary judgment on the claim for "equitable restitution."

IT IS SO ORDERED.